UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Juan Rodriguez, Jr.,

       Plaintiff,

       v.                        Civil Action No. 5:19–cv–143-gwc-jmc

Michael Touchette et al.,

       Defendants.

## REPORT AND RECOMMENDATION AND
## OPINION AND ORDER
(Docs. 13, 16)

Juan Rodriguez, Jr., a Vermont inmate proceeding *pro se*, brings this action

under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights

by extending his period of incarceration beyond that imposed on him by the

sentencing court.  (Doc. 5 at 3–4; Doc. 6 at 13.)  Specifically, Rodriguez claims that

Defendants are improperly requiring him to "submit to the Vermont Sex Offender

Registry" for a previous, unrelated offense in Connecticut and that he has been cited

for his failure to register, thereby precluding his release on the date he expected.

(Doc. 5 at 3.)  He names as Defendants Michael Touchette, former Commissioner of

the Vermont Department of Corrections (DOC),[1] and Joel Machado, Corrections

Service Specialist at Northern State Correctional Facility (NSCF) in Vermont.

---

[1] Since the filing of this suit, Michael Touchette has stepped down as Commissioner of the DOC.  As Touchette's successor has not yet been appointed, under Federal Rule of Civil Procedure 25(d), the Commissioner of the Vermont DOC is automatically substituted for Touchette in his official capacity as Defendant in this case.

(*Id.* at 1; Doc. 16 at 1–2.)  Rodriguez seeks injunctive relief as well as money damages.  (Doc. 5 at 6–7, 19–20.)

Presently before the Court is Defendants' Motion to Dismiss Rodriguez's Complaint (Doc. 16), and Rodriguez's second Motion to Amend his Complaint and to clarify the Court's September 27, 2019 Opinion and Order (Doc. 13).  As explained below, Rodriguez's Motion to Clarify (Doc. 13) is GRANTED.  However, for the reasons also set forth below, I recommend that Defendants' Motion to Dismiss (Doc. 16) be GRANTED, and that Rodriguez's Motion to Amend Complaint (Doc. 13) be DENIED.

## Background

In his Complaint, Rodriguez alleges that he was preparing to be released from NSCF when he was called into his caseworker's office on or about July 8, 2019. (Doc. 5 at 3, 18.)  He states that his caseworker, Defendant Joel Machado, informed him that "Connecticut messed up when they let [him] off probation" for his previous offense, and that under Vermont law, "anyone and everyone with [his] type of offen[s]e must submit to lifetime registration as a sex offender."  (*Id.* at 3.) Rodriguez alleges that Machado also told him that he was now being cited for his failure to register.  (*Id.*)  He states that Machado then presented him with a "Registry Worksheet."  (*Id.* at 6.)  He claims that when he asked Machado what would happen if he didn't sign the worksheet, Machado told him he would receive another citation for failing to register.  (*Id.* at 4, 6.)  Rodriguez states that he felt

"angry and bullied," and on the worksheet next to his signature, wrote, "I am being forced by VT DOC to sign this." (*Id.* at 6.)

Rodriguez asserts that he completed his sentence for the Connecticut offense and placement on a sex offender registry was never a condition of his probation for that offense. (*Id.* at 3.)  He contends that, as a result of the DOC requiring him to register as a sex offender as well as the citation that was to be issued for failing to do so, he is being improperly held in DOC custody beyond the date he expected to be released. (*Id.* at 3–4.)  He states that he did not file any grievances about the issue through the NSCF grievance procedure because he did not believe "that a grievance would be treated with any amount of impartiality or fairness" and he "was afraid of further acts to discriminate against [him]." (*Id.* at 8–9.)

Rodriguez seeks an injunction to compel Defendants "to cease . . . impeding on his rights." (*Id.* at 19.)  He further seeks compensatory and punitive damages. (*Id.* at 19–20.)  Defendants have moved to dismiss the Complaint. (Doc. 16.)

<u>Analysis</u>

## I.    Legal Standards

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *Iqbal*, 556 U.S. at 678.  This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but plaintiffs must allege facts that permit "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678.  Accordingly, allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them," are subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555, 557 (holding that a pleading containing "a formulaic recitation of the elements of a cause of action," "labels and conclusions," or "naked assertion[s]" devoid of factual enhancement, does not satisfy Federal Rule of Civil Procedure 8(a)).  A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief."  *Id.* at 558.  Because Rodriguez is representing himself, in addition to accepting his factual allegations as true, the court is also required to read his Complaint liberally and construe it to raise the strongest possible argument.  *Harris v. Miller*, 818 F.3d 49, 56–57 (2d Cir. 2016) (per curiam).

On the other hand, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see McKay v. New York*, Case # 16-CV-6834-FPG, 2018 WL 1046792, at *2 (W.D.N.Y. Feb. 26, 2018) ("The proper vehicle for challenging standing or asserting mootness is thus a Rule 12(b)(1) motion to dismiss."). When a defendant brings a fact-based Rule 12(b)(1) motion, he is permitted to "proffer[] evidence beyond the [complaint]." *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 57 (2d Cir. 2016). "In opposition to such a motion, the plaintiff[] will need to come forward with evidence of their own" to controvert any factual issues raised by the defendant regarding the court's subject-matter jurisdiction. *Id.* Thus, a district court considering a Rule 12(b)(1) motion "may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). If the evidence proffered by the defendant "does not contradict plausible allegations that are themselves sufficient" to establish jurisdiction, the plaintiff may simply rely on the allegations in the complaint. *Carter*, 822 F.3d at 57.

## II.   42 U.S.C. § 1983

Rodriguez brings his claims pursuant to 42 U.S.C. § 1983. Under § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C.

§ 1983).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Id.*  The U.S. Supreme Court has identified two elements of a § 1983 claim: "a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 does not itself create or establish a federally protected right; instead, it creates a cause of action to enforce federal rights created elsewhere, such as a federal constitutional right.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Here, Rodriguez alleges that Defendants violated his "[First] Am[]endment rights to freedoms."  (Doc. 5 at 2.)  However, he also uses language suggesting claims under the Double Jeopardy Clause (*id.* at 16 ("It's like being convicted twice for the same crime.")), the Eighth Amendment (Doc. 13 at 3 (alleging "cruel [and] unusual punishment"); *id.* at 7 (alleging "deliberate indifference")), and the Fourteenth Amendment (Doc. 5 at 16 (asserting that registration requirement was imposed "without notice, [and] without a fair hearing")).  Because I recommend dismissal for the reasons discussed below, it is unnecessary to determine the constitutional provision under which Rodriguez's claim arises.

## III.  Mootness

Defendants argue that Rodriguez's claim is moot.  (Doc. 16 at 4–5.)  The mootness doctrine requires that "an actual controversy . . . be extant at all stages of

6

the case, not just at the time the complaint is filed." *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002) (quoting *Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir. 1986)). "A case is deemed moot where the problem sought to be remedied has ceased, and where there is no reasonable expectation that the wrong will be repeated." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam) (internal quotation marks omitted); *see also Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

Defendants contend that Rodriguez's claim is moot because he has received the remedy he seeks in this action—namely, "having the sex offender registration requirement eliminated." (Doc. 16 at 5.) Defendants attach to the Motion to Dismiss a letter from the Vermont Crime Information Center (VCIC), which states that the DOC has determined that Rodriguez is not required to register with the Vermont Sex Offender Registry and that VCIC will therefore not pursue his registration. (Doc. 16-2.)

Rodriguez brought suit because he was allegedly being required to register as a sex offender in Vermont for his previous offense in Connecticut.[2] Because he is no longer required to submit to sex offender registration, "the issue[] in dispute between the parties [is] no longer live." *Lillbask ex rel. Mauclaire v. State of Conn.*

---

[2] Rodriguez also alleges that Machado told him that he was being cited for his failure to register and would receive another citation if he refused to sign the "Registry Worksheet." (Doc. 5 at 3, 6.) Pursuant to Rule 3(h) of the Vermont Rules of Criminal Procedure, an officer may issue a citation to appear to any person the officer has probable cause to believe has committed a crime. However, there is no allegation that Rodriguez was ever issued a citation or otherwise charged with failure to register as a sex offender.

*Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005) (internal quotation marks omitted). Accordingly, his claim for injunctive relief is moot as such relief "is no longer needed." *Martin-Trigona*, 702 F.2d at 386. I therefore recommend Defendants' Motion to Dismiss Rodriguez's claim for injunctive relief be GRANTED.

## IV. Exhaustion Under the Prison Litigation Reform Act (PLRA)

Defendants assert that Rodriguez failed to exhaust his administrative remedies and he has not shown significant "special circumstances" to excuse his non-exhaustion. (Doc. 16 at 5–10.) Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion requires inmates to comply with and complete the prison grievance procedures in place at the institution to which they are confined. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."). Moreover, the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . . ." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion under the PLRA is "not a jurisdictional predicate," but rather "failure to exhaust is an affirmative defense." *Giano v. Goord*, 380 F.3d 670, 675

(2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). Because it is an affirmative defense, the burden lies with the defendant "to demonstrate nonexhaustion"; it is "not [the] [p]laintiff's burden to plead exhaustion with particularity." *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 722 (W.D.N.Y. 2015). Accordingly, the court should only grant a motion to dismiss on failure to exhaust grounds where "nonexhaustion is evident on the face of the plaintiff's complaint." *Preterotti v. Souliere*, Civil Action No. 2:16–cv–72–wks–jmc, 2016 WL 7971319, at *3 (D. Vt. Dec. 28, 2016).

Inmates are exempt from the exhaustion requirement when administrative remedies are "unavailable." *Ross*, 136 S. Ct. at 1858. An administrative procedure is unavailable when (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.[3] Exhaustion is required even when some of the relief sought is not available under the grievance process. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) (holding that the PLRA requires exhaustion "regardless of the fit between a prisoner's prayer for

---

[3] Contrary to Defendants' assertions, the "special circumstances" exception to the PLRA's exhaustion requirement is no longer good law. *See Ross*, 136 S. Ct. at 1858 (rejecting "special circumstances" exception, deeming it "a thing of the past" and holding that the exhaustion analysis instead focuses on the functional availability of administrative remedies); *see also Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (acknowledging that *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), which set forth the Second Circuit's "special circumstances" exception, was abrogated in part by *Ross*).

relief and the administrative remedies possible"); *Weller v. Dykeman*, Civil Action No. 5:10–CV–181, 2012 WL 5409663, at *5 (D. Vt. Oct. 10, 2012) ("[P]risoners must utilize state grievance procedures even where the relief sought, such as money damages, is not offered through those procedures.").

Here, Rodriguez states that NSCF has a grievance procedure in place, but admits that he did not exhaust that process. (Doc. 5 at 8.) Although there is no evidence that the applicable administrative remedies were functionally unavailable to him, he alleges that because DOC officials themselves committed the acts giving rise to his complaint, he did not believe he "would be treated with any amount of impartiality or fairness." (*Id.* at 9.) He further asserts that he was afraid of retaliation and "further acts to discriminate against [him]." (*Id.*)

However, these speculative and conclusory statements are unavailing. Rodriguez's concern that his grievances would not be fairly considered by prison officials, and it would therefore be futile to file any complaints, is insufficient to excuse his obligation to exhaust administrative remedies. *See Harrison v. Goord*, No. 07 Civ. 1806(HB), 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009) ("Prisoners are required to exhaust their administrative remedies even if they believe that administrative remedies would be ineffective or futile." (internal quotation marks omitted)); *McMillian v. Walters*, Civ. No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *3 (N.D.N.Y. Dec. 18, 2017) ("An inmate's belief that administrative remedies would be futile is not a valid excuse establishing the unavailability of such remedies."). Moreover, Rodriguez offers no specific facts to support his contention

that he was afraid of retaliation; there is no allegation that Defendants "acted affirmatively" to prevent Rodriguez from availing himself of the grievance process. *Pridgen v. Beatie*, No. 9:16-CV-535 (DNH/CFH), 2018 WL 1402049, at *8 (N.D.N.Y. Jan. 17, 2018); *see also id.* ("[A] generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies."); *Harrison v. Stallone*, No. 9:06-CV-902 (LEK/GJD), 2007 WL 2789473, at *5 (N.D.N.Y. Sept. 24, 2007) ("If an inmate could simply state that he feared retaliation, there would be no point in having a grievance procedure . . . ."). Accordingly, NSCF's administrative remedies were available to Rodriguez and he is not exempt from the exhaustion requirement.

Because nonexhaustion is evident on the face of Rodriguez's Complaint, I recommend Defendants' Motion to Dismiss the Complaint for failure to exhaust administrative remedies be GRANTED.

## V.      Official-Capacity Claims for Money Damages

Defendants, both DOC officials, also move to dismiss Rodriguez's claims against them in their official capacities. (Doc. 16 at 10–12.) Section 1983 allows suit against "persons." State officers sued in their official capacity are not "persons" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Accordingly, Defendants in their official capacities are not "persons" under § 1983 and Rodriguez's claims against them must be dismissed.

In addition, the Eleventh Amendment[4] protects a state from suits in federal courts unless there has been an explicit and unequivocal waiver of immunity by a state or a similarly clear abrogation of immunity by Congress.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  This protection also extends to suits for money damages against state officials in their official capacity.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  The State of Vermont has not waived its Eleventh Amendment sovereign immunity.  In fact, the Vermont Legislature has specifically preserved the State's immunity under that Amendment.  *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived).  It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979).  Consequently, Rodriguez's claims against Defendants in their official capacities are barred.[5]

## VI.   Personal Involvement

Defendant Touchette further argues that Rodriguez's claims against him in his individual capacity should be dismissed for lack of personal involvement.  (Doc. 16 at 12–14.)  "It is well settled in this Circuit that personal involvement of

---

[4] The Eleventh Amendment bars federal suits against state governments by citizens of another state or foreign country as well as by a state's own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

[5] To the extent that the DOC is a party to this suit, and given its status as a state agency, any claims brought against it are also barred by the Eleventh Amendment.  *See Pennhurst*, 465 U.S. at 100 (finding that agencies and departments of a state are entitled to assert the state's Eleventh Amendment immunity); *see also Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) ("Neither a state nor one of its agencies . . . is a 'person' under § 1983." (quoting *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998))).

defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted); *see also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).  However, supervisory officials may not be held liable merely because they hold positions of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam) ("[M]ere linkage in the prison chain of command is insufficient to implicate [prison officials] in a § 1983 claim." (internal quotation marks omitted)).

In order to prevail on a § 1983 cause of action against an individual, a plaintiff must establish some "tangible connection" between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Thus, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Rodriguez's Complaint does not allege any facts from which the court can infer that Touchette was personally involved in the alleged constitutional violations. Beyond being named as a party, Touchette's name does not appear in the text of the Complaint.  Rodriguez does not allege that Touchette himself sought Rodriguez's

registration on the Vermont Sex Offender Registry or that he otherwise directly participated in any unlawful action.  He does not aver that Touchette had a policy or custom of improperly requiring inmates to register as sex offenders.  In fact, Rodriguez does not even contend that Touchette was aware of the alleged constitutional violation.  *See Jordan v. Fischer*, 773 F. Supp. 2d 255, 278 (N.D.N.Y. 2011) (stating that defendants must become aware of the alleged unconstitutional acts while they are ongoing and capable of being remedied).  Thus, Rodriguez's claims for damages against Touchette in his individual capacity should be dismissed for lack of personal involvement.

## VII.   Defendants' Additional Arguments

Because I recommend dismissal of Rodriguez's claims against all Defendants for the reasons described in this Report and Recommendation, I do not consider Defendants' additional argument that Rodriguez's claims for compensatory damages are barred by the PLRA's physical injury requirement.  (Doc. 16 at 14–15.) Under 42 U.S.C. § 1997e(e), a prisoner may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury."  *See also Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002) (holding that a plaintiff under the PLRA "cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury").  However, even absent physical injury, a prisoner-plaintiff may still recover compensatory damages for the loss of a "constitutional liberty interest." *See, e.g., Holland v. City of New York*, 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016)

14

(collecting cases).  Here, it is not clear whether Rodriguez's claims implicate a protected liberty interest to exempt him from the physical injury requirement.  *See Medina v. Cuomo*, 7:15-CV-01283 (GTS/TWD), 2015 WL 13744627, at *13 (N.D.N.Y. Nov. 9, 2015) ("[T]he issue of whether requiring an individual to register as a sex offender implicates a liberty interest does not appear to have been conclusively decided in this Circuit . . . ."); *see also Gordon v. Semrung*, 14-CV-324S, 2017 WL 2241966, at *6 (W.D.N.Y. May 23, 2017) ("[A] prisoner or parolee may have a liberty interest in avoiding the stigma and tangible impairment associated with a registered sex offender designation . . . ."); *Yunus v. Robinson*, 17-CV-5839 (AJN) (BCM), 2018 WL 3455408, at *16 (S.D.N.Y. June 29, 2018) (finding plaintiff, who had been convicted for kidnapping but was considered a sex offender because one victim was under the age of 17, had a cognizable liberty interest in not being required to register as a sex offender).  However, because Rodriguez's claims are barred for nonexhaustion, it is unnecessary to determine whether his claims implicate a protected liberty interest and whether the PLRA bars his claims for compensatory damages.

For the same reasons, it is unnecessary to address whether Rodriguez has alleged sufficient facts to support his claims for punitive damages.  *See DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) (explaining that punitive damages may be awarded in a § 1983 action only when the plaintiff can show that the defendant's conduct was "motivated by evil motive or intent, or . . . involve[d] reckless or callous

indifference to the federally protected rights of others" (quoting *Smith v. Wade*,

461 U.S. 30, 56 (1983))).

## VIII.  Motion to Clarify and Leave to Amend

Lastly, Rodriguez asks the Court to clarify its September 27, 2019 Opinion

and Order and seeks leave to amend his Complaint.  (Doc. 13.)  Rodriguez

previously sought leave to file an Amended Complaint.  (Doc. 6.)  On September 27,

2019, the Court granted his request pursuant to Federal Rule of Civil Procedure

15(a) and explained that "an Amended Complaint, if filed, will supersede and

completely replace the original Complaint."  (Doc. 10 at 5.)  Rodriguez now states

that he is confused by the Court's Order and asks for clarification.  In view of his

*pro se* status, the Motion to Clarify (Doc. 13) is GRANTED.

Rodriguez emphasizes that he intended the document attached to his first

Motion to Amend *to be* his Amended Complaint.  (Doc. 13 at 1.)  However, this

Court was clear that "the Motion to Amend does not operate to amend his

complaint." (Doc. 10 at 5).  Rather, the Court explained that Rodriguez must

separately file his Amended Complaint on or before October 28, 2019 in order for it

to supersede the original Complaint.  (*Id.*)  If he elected not to do so, the Court

informed him that further proceedings would "be conducted with reference to the

original Complaint."  (*Id.*)

Rodriguez now again seeks leave to amend his Complaint.  (Doc. 13.)

Ordinarily, a *pro se* plaintiff should be granted the opportunity "to amend at least

once when a liberal reading of the complaint gives any indication that a valid claim

might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted).  However, where "amendment would be futile, leave to amend need not be given." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).  Rodriguez has already been granted leave to amend his Complaint once. (Doc. 10.)  Because his action is barred for mootness, failure to exhaust administrative remedies, and the doctrine of sovereign immunity, the defects in his Complaint cannot be cured by amendment.  Leave to amend should therefore be denied.

## Conclusion

For these reasons, I recommend that Defendants' Motion to Dismiss (Doc. 16) be GRANTED.  Although Rodriguez's Motion to Clarify is GRANTED I further recommend that Rodriguez's Motion to Amend Complaint (Doc. 13) be DENIED.

Dated at Burlington, in the District of Vermont, this 11th day of May 2020.

/s/ John M. Conroy                     .
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).